[Crim. No. 4454.   In Bank.   Jan. 29, 1943.]

THE PEOPLE, Respondent, v. WARREN CRAMER, Appellant.

Warren Cramer, in pro. per., for Appellant.

Earl Warren, Attorney General, David H. Lener, Deputy Attorney General, Matthew Brady, District Attorney, and Leslie C. Gillen, Assistant District Attorney, for Respondent.

THE COURT.—This is an automatic appeal from a judgment of conviction of first degree murder imposing the death penalty on the defendant. (See § 1239, Pen. Code.)

The District Attorney of the City and County of San Francisco filed an information charging defendant with the murder of one Ernest Saxton on July 5, 1942, and with prior convictions of robbery and grand theft. ■ At the time set for arraignment, defendant expressed a desire to discharge his attorney and to enter a plea of guilty, but his counsel, over defendant's objection, suggested that a doubt existed as to defendant's sanity. Further proceedings under the information were suspended and, a jury having been waived, a hearing was had before the court to inquire into defendant's sanity. To assist it in the determination of this issue, the court appointed three eminent psychiatrists to examine defendant and to submit findings. An exhaustive hearing was had at which evidence was adduced tending to show insanity in certain of the defendant's ancestors and also prior adjudications of insanity against the defendant himself. There is also evidence of defendant's subsequent discharge as sane and, in addition, his own testimony that he had made a study of insanity and had successfully feigned its symptoms on prior occasions in order to avoid the penal punishment that otherwise would have resulted for earlier misdeeds. Defendant's testimony reveals a detailed knowledge of insanity and its symptoms.

One of the experts testified that it is possible to feign cer-

tain symptoms of insanity and stated it as his opinion that upon former occasions the defendant had "accomplished his purpose of being declared insane" by feigning some of such symptoms. All three experts testified that defendant is sane and knows right from wrong. In addition, the chief psychiatrist at San Quentin penitentiary was called as a witness by defendant's counsel. He testified that on numerous occasions between 1937 and 1942, when the defendant was an inmate of the institution, he had opportunity to observe and examine him, and he was of the opinion that the defendant was not insane, but represented a self-willed, spoiled and undisciplined individual.

The four doctors agreed that the defendant was of superior intelligence, could rationalize as to what he had done, was capable of fully understanding and appreciating the significance and seriousness of his trial on the murder charge, and was wholly capable of rationally defending himself. With this evidence before it, as well as the defendant's testimony wherein he reveals himself to be highly intelligent, the trial court properly determined that the defendant was "presently sane" and "comprehends the nature and object of these proceedings and as a consequence of that is able to make a proper defense."

Upon arraignment for plea the defendant stated that he would represent himself, and requested his counsel to withdraw from the case. The court, however, in order to protect defendant's rights, requested counsel to remain and give any advice required in the presentation of the defense. Defendant thereupon entered a plea of guilty to the murder charge and admitted the prior offenses.

The evidence addressed to the degree of the crime showed that the deceased, a drug store attendant, was shot by the defendant while the latter was attempting to rob his store. Prior to the shooting, defendant had purchased the gun from a taxicab driver and had stolen the automobile used in fleeing from the scene of the crime. He was apprehended later when the stolen automobile was recognized by policemen. Shortly after his arrest, defendant made and signed two statements, which the evidence discloses to have been voluntary, in which he set forth the details surrounding commission of the homicide and wherein he freely admitted his guilt. The evidence amply supports the judgment determining the murder to be

of the first degree and imposing the death penalty. (See §§ 189, 190, Pen. Code.)

The judgment is affirmed.